**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BARNEY F. KOGEN & CO., *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-05-1083 |
| § | |
| TRED AVON ASSOCIATES LTD., § | |
| T/A Oxford Boatyard, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Plaintiffs, Barney F. Kogen & Co., a Texas corporation, and its president and chief executive officer, Barney Kogen, a Texas resident, have sued Tred Avon Associates Ltd., T/A Oxford Boatyard, a Maryland corporation. Kogen filed this suit after his yacht sank while it was at the Oxford Boatyard for maintenance and repair work. Kogen asserts state-law causes of action for breach of the contract to perform the work; negligence; and bailment. Oxford Boatyard has moved to dismiss for lack of personal jurisdiction or, alternatively, to transfer to the federal district court for the District of Maryland. Kogen asserts that because Oxford Boatyard personnel knew that the yacht was owned by a Texan and because there were two telephone calls between Kogen in Texas and an Oxford Boatyard representative in Maryland, there is a basis for this Texas court to assert personal jurisdiction over Oxford Boatyard.

Based on the pleadings, the motion and response, the parties' submissions, and the applicable law, this court grants the motion to dismiss, making the motion to transfer moot. The reasons are set out below.

**I.    Background**

Kogen owns the sailing yacht *Kamp Kogen*, which is registered and has its home port in Houston, Texas. The words "Houston, Texas," are painted on the vessel. According to affidavits filed by Kogen and the captain of the *Kamp Kogen*, James Hunter White, in the fall of 2003, the vessel was in the Maryland area and in need of "routine maintenance and painting." White contacted the general manager of the Oxford Boatyard and discussed the work that would be needed. Oxford Boatyard bid for the work and the bid was accepted. In January 2004, the vessel sank while moored at the Oxford Boatyard slip. This lawsuit followed.

The parties dispute the communications that preceded the contract for the maintenance work and the sinking of the yacht. White, the *Kamp Kogen* captain, who was from Maryland, asserts that he told Braxton Streuber, the Oxford Boatyard general manager, that the vessel was owned by a Texan who was very "particular" about work done on the yacht. Oxford Boatyard faxed White a bid for the work to be done. White transmitted the bid to Kogen. According to Kogen's affidavit, when he received the bid, he spoke by telephone with a representative from Oxford Boatyard about the work and the costs and orally accepted the bid. Kogen also states that at some point after he accepted the bid but before the vessel sank, he had another telephone conversation with Streuber at Oxford Boatyard about the

method of paying for its invoices. Kogen provided Streuber with a credit card number to pay Oxford Boatyard for the maintenance work. All the work was performed in Maryland.

Oxford Boatyard submitted an affidavit from Braxton Streuber that differs from the assertions made by Kogen and White. Streuber asserted that the only communications Oxford Boatyard had about the *Kamp Kogen* before it sank were with White, a Maryland resident, and denied any knowledge that the vessel was owned by a Texan. Oxford Boatyard asserted that it faxed the bid to White in Maryland, and he signed and returned it. A copy of the signed bid is attached to Oxford Boatyard's motion to dismiss. Oxford Boatyard asserted that it submitted invoices to White in Maryland and that payment was made through a credit card that was authorized by White in Maryland. In response to the affidavits from Kogen and White, Oxford Boatyard argues that even accepting as true the assertions in the Kogen and White affidavits that there were two telephone calls from Kogen to Oxford Boatyard before the vessel sank, there is not sufficient basis for specific personal jurisdiction.

It is undisputed that Oxford Boatyard has no office in Texas; has no agent or representative in Texas; does not advertise in Texas; and has no property or bank account in Texas. Oxford Boatyard's only employees are in Maryland. Oxford Boatyard provided the goods and services at issue in Maryland, and the vessel sank in Maryland. The threshold issue is specific personal jurisdiction over Oxford Boatyard by a Texas court.

## II. The Legal Standard for Specific Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction

3

over that defendant, and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Latshaw v. H.E. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Texas's long-arm statute extends to the limits of due process. The question is whether subjecting Oxford Boatyard to suit in Texas is consistent with the Due Process Clause of the Fourteenth Amendment. *See Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" aspect of the analysis can be established through "contacts that give rise to 'specific' personal jurisdiction or those that give rise to 'general' personal jurisdiction." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *See id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *See id.* (citing *Helicopteros*, 466 U.S. at 414 n.9). To decide specific jurisdiction, a court must

"examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted). There must be a sufficient nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1390 (5th Cir. 1987). Specific jurisdiction is limited to adjudication of the particular controversy that arises out of or is related to the defendant's contacts with the forum. *ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003); *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993)(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Qurck Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir.2002); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of

5

the recognized methods of discovery." *Stuart*, 772 F.2d at 1192. The plaintiff "need only present a prima facie case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985), *quoted in WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor . . . ." *D.J. Investments*, 754 F.2d at 546, *quoted in Bulllion v. Gilllespie,* 895 F.2d 213, 217 (5th Cir. 1990).

**III.     Analysis**

The record in this case discloses no basis for asserting general jurisdiction over Oxford Boatyard. Oxford Boatyard lacks the continuous and systematic presence in Texas necessary for general jurisdiction. *See Alpine View Co., Ltd. v. Atlas Copco AB,* 205 F.3d 208, 217 (5th Cir. 2000) (describing substantial, systematic, and continuous presence required for general jurisdiction). Plaintiffs rely on evidence of Oxford Boatyard's knowledge that the yacht was owned by a Texan and had a home port in Texas, that Kogen spoke on the telephone with an Oxford Boatyard representative about the bid and orally accepted it over the telephone, and that Kogen spoke on the telephone with an Oxford Boatyard representative about the method of payment, as the basis for specific jurisdiction. For the purpose of this motion, this court assumes the facts set out in Kogen's and White's affidavits to be true. *See D.J. Investments*, 754 F.2d at 546; *see also Stripling v. Jordan Production Co.*, 234 F.3d 863, 869 (5th Cir. 2000).

The law is clear that a contract with an out-of-state party does not in itself establish minimum contacts with that party's home state. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("[I]f the question is whether an individual's contract with an out of state party alone can automatically establish sufficient minimum contacts in the other party's home forum, . . . the answer clearly is that it cannot."). The case law makes it clear that even if Oxford Boatyard knew that the *Kamp Kogen* had a Texas origin or owner, that would not be sufficient for personal jurisdiction by a Texas court. The relationship between the contracting parties and Texas, including their negotiations and course of dealing, are not sufficient to justify the exercise of this court's jurisdiction over Oxford Boatyard. *See generally, Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986); *Smirch v. Allied Shipyard, Inc.*, 164 F.Supp.2d 903 (S.D. Tex. 2001).

It is undisputed that Oxford Boatyard did not solicit Kogen's business. To the contrary, it was White, Kogen's agent and a Maryland resident, who approached Oxford Boatyard. It is also undisputed that most of the negotiations occurred between Oxford Boatyard and White, in Maryland. White received the bid by fax from Oxford Boatyard, signed it, and returned it signed to Oxford Boatyard. All the work was done at Oxford Boatyard in Maryland, and the boat sank there.

The case law recognizes that in some circumstances, an out-of-state party's communications with a party in the forum state can provide a sufficient basis for specific personal jurisdiction in that forum. In such cases, however, the content of the

7

communications has a direct connection to the causes of action asserted. *See, e.g., Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (finding specific jurisdiction because the misrepresentations made in the communications gave rise to the plaintiff's fraud claim); *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (one telephone call with plaintiff in Texas and one contract sent to Texas, both containing material misrepresentations forming basis of cause of action, sufficient to establish minimum contacts); *S & J Diving v. Doo-Pie, Inc.*, 2002 WL 11634 (S.D. Tex. 2002) (plaintiffs' claims for fraud and misrepresentation arose in part out of the communications the nonresident defendant directed to the plaintiffs in Texas; the claims plaintiffs asserted as to the quality and timeliness in delivery arose directly from those contracts). In the present case, by contrast, the only precontract communication between the Kogen in Texas and Oxford Boatyard in Maryland was a single telephone call, that appears to have been initiated by Kogen, about the bid price and scope of the maintenance work to be done. This lawsuit arises out of the fact that the vessel sunk while it was in Oxford Boatyard's custody, not the specifics of the maintenance work that was performed under the bid. Although Kogen makes general assertions in his affidavit that Oxford Boatyard "represented that it was qualified and capable of performing the necessary workmanship on the Kamp Kogen," there is an insufficient relationship between such communications and the causes of action asserted to constitute purposeful availment. Kogen has alleged breach of the contract to service the *Kamp Kogen*, negligence in servicing the *Kamp Kogen*, and bailment. There is no allegation of fraudulent inducement to contract and no allegation that the content of the communications with the forum gave rise

to intentional tort causes of action. Similarly, even assuming that Kogen had a second telephone call with Oxford Boatyard to provide a credit card number to pay the invoices mailed in Maryland to White, Kogen's agent, who was also in Maryland, for work performed in Maryland, this would be insufficient to provide a basis for specific personal jurisdiction in Texas. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d at 777-778; *Smirch v. Allied Shipyard, Inc.*, 164 F. Supp.2d at 907-908.

The combination of the information that the *Kamp Kogen* was owned by a Texan and the two telephone calls from Texas to Maryland – one precontract and one precasualty – do not permit a finding that Oxford Boatyard "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. There is no allegation or evidence of intentional tortious conduct directed to Texas or any other basis to meet the purposeful availment requirement. To the contrary, the evidence is undisputed that Kogen's agent, a Maryland resident, approached Oxford Boatyard about performing maintenance work on the yacht, conducted negotiations for the work in Maryland, and signed the contract in Maryland, for work to be performed in Maryland. There is no "purposeful availment" "'such that [the defendant] should reasonably anticipate being haled into court'" in the forum state. *Revell*, 317 F.3d at 475 (quoting *Burger King*, 471 U.S. at 474). The motion to dismiss for lack of personal jurisdiction is granted. This result makes it unnecessary to address the motion to transfer.

## IV.     Conclusion

This case is dismissed, without prejudice, for lack of personal jurisdiction.

SIGNED on June 24, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge